### W. H. BRYANT v. JETTIE MAE BRYANT.

(Filed 10 December, 1947.)

**1. Judgments § 25—**

The proper procedure to attack a divorce decree on the ground that plaintiff had not been a resident of the State for six months preceding the institution of the action, G. S., 50-6, is by motion in the cause.

**2. Divorce § 3—**

Plaintiff must be physically present in this State and have the intention of making his residence here à permanent abiding place in order to be domiciled here within the meaning of the statute making residence in this State for six months a jurisdictional prerequisite to the institution of an action for divorce on the grounds of two years separation.

**3. Domicile—**

To establish a domicile, there must be a residence, and the intention to make it a home or to live there indefinitely.

**4. Divorce § 3: Judgments § 25—**

The finding of the court, supported by evidence, that plaintiff was physically present in this State for more than six months prior to instituting action for divorce and that he regarded his residence here as a permanent home, is sufficient to support judgment denying defendant's motion in the cause to set aside the divorce decree on the ground of want of the jurisdictional requirement of domicile.

**5. Domicile—**

The fact that a person obtains automobile license and ration cards in another state, giving such state as his residence, while competent on the question of domicile, is not conclusive.

**6. Appeal and Error § 40d—**

Findings of fact by the trial court when supported by evidence, notwithstanding that there may be evidence *contra*, are binding on appeal.

APPEAL by defendant from *Nimocks, J.,* at February Term, 1947, of ROBESON. Affirmed.

This was a motion in the cause by the defendant to set aside judgment in a divorce action on the ground that the plaintiff was not a resident of North Carolina as required by the statute, G. S., 50-6. The motion was not made until after the plaintiff had died, and his personal representatives and heirs were made parties, and answered.

After hearing the evidence offered by the movent and that on behalf of the respondents the court made certain findings of fact and upon them denied defendant's motion. It was not controverted that plaintiff and defendant were married in 1929, and separated permanently in 1932; that 19 October, 1943, plaintiff instituted action for divorce on the

ground of two years separation in the Superior Court of Robeson County alleging residence in this State for more than six months. The defendant was personally served with summons, and filed no answer. At February-March Term, 1944, the case came on regularly for trial before judge and jury, proper issues were submitted and answered in favor of plaintiff, and judgment was rendered accordingly.

It appeared that plaintiff formerly lived near Conway, South Carolina, where he owned a farm of 147 acres, and that in February, 1943, he rented out his farm and came to live with his son in Robeson County, bringing with him his automobile, and his clothes and personal effects. There he remained, working at times with his son on the farm, until the summer of 1944, when he returned to South Carolina to live with his daughter and there died in April, 1946. It also appeared that plaintiff registered his automobile in South Carolina in 1941, and that in October, 1943, he renewed his license in that state, stating his residence as Conway, South Carolina, and that he made application there for gasoline and ration books for 1943-44. The court further found:

"8. In the early spring of 1943, he rented out his farm, stored his furniture and went to live with his son Mack in Robeson County, North Carolina, leaving South Carolina and moving with his son in February, 1943. He took with him his automobile, his truck, suitcase, china, bed clothes, gun and Bible. He had a separate room in his son's home. He did odd jobs about the farm and during tobacco time he worked for wages paid him by W. A. Stone. He bought his own groceries, received his mail there and attended church in the neighborhood regularly and visited among the neighbors and was a resident in North Carolina, more than 55 miles from his former home in South Carolina. At the time he went to live with his son Mack he asked his son's landlord, W. A. Stone, if it was agreeable with him for him to move there and live with his son. He told neighbors in his new home that he had moved to live with his son Mack; that he was better satisfied with him than any of his other children and had moved there with Mack to stay.

"9. In November of 1943, his son Mack took him from Robeson County to Horry County, South Carolina, where he spent a day and a night and while there he sold out his furniture, stored in the old home, and his farming equipment, pursuant to a newspaper advertisement theretofore made by him. In the late fall of 1943, Mack Bryant moved his home to the nearby farm of Dewey Stone, in Robeson County, and plaintiff moved there with him. At the time, Mack Bryant informed his new landlord that his father would work with him during the year 1944. W. H. Bryant continued to live with his son Mack in Robeson County until the early summer or late spring of 1944, and while living there, from time to time, he told neighbors that he intended to remain in Robeson County.

"10. That plaintiff, W. H. Bryant, spent a portion of his time throughout the year 1943 in and around Conway, South Carolina, and in other parts of Horry County, and while there purchased gasoline and other articles from stores near his farm, at times spending nights in the home of neighbors and with some of his own children in said State, and there was a mail box near his farm; that at frequent intervals during 1943 he called on a lady in Homewood, South Carolina, and was frequently seen coming and going in the neighborhood of his old home in South Carolina.

"11. Plaintiff continued to live in the home of his son, Mack Bryant, in Robeson County, until the late spring or early summer of 1944, at which time he returned to Horry County, South Carolina, and went to the home of his daughter, where he remained there and in the hospital until he died in 1946.

"Upon the foregoing findings of fact, it is ordered, adjudged and decreed:

"1. That on October 19, 1943, at the time of the institution of this suit, plaintiff had been a resident of Robeson County, North Carolina, for more than six months next preceding the commencement of this action.

"2. That the motion of the defendant to set aside the judgment is denied."

From judgment denying the motion defendant appealed.

*L. J. Britt and McLean & Stacy for plaintiff, appellee.*
*Johnson & Johnson for defendant, appellant.*

DEVIN, J. By motion in the cause the defendant sought to vacate the divorce decree theretofore rendered on the ground that at the time plaintiff instituted his action he was not and had not been for six months a resident of North Carolina as required by G. S., 50-6. Properly the procedure for obtaining relief on the ground alleged was by motion in the cause. *Simmons v. Simmons, ante,* 233.

However, the controverted issue raised by defendant's motion as to the residence of plaintiff at the time of his divorce action seems to have been determined against the defendant by the findings of fact.

In order to constitute residence as a jurisdictional fact to render a divorce decree valid under the laws of this State there must not only be physical presence at some place in the State but also the intention to make such locality a permanent abiding place. There must be both residence and *animus manendi. Reynolds v. Cotton Mills,* 177 N. C., 412, 99 S. E., 240; *Roanoke Rapids v. Patterson,* 184 N. C., 137, 113 S. E., 603; *S. v. Williams,* 224 N. C., 183 (191), 29 S. E. (2d), 744. To establish a domicile there must be residence, and the intention to make it a home or to live there permanently or indefinitely. *S. v. Williams, supra.*

. The court found the facts as to plaintiff's actual residence in Robeson County, North Carolina, for more than the statutory period, and further found that at the time he expressed the intention of remaining in Robeson County, saying he had moved there to stay. The fact that plaintiff, for the purpose of obtaining automobile license and ration cards stated his residence as Conway, South Carolina, was some evidence on the question of domicile but not necessarily conclusive. *Welch v. Welch,* 226 N. C., 541, 30 S. E. (2d), 457.

While there was evidence from which a contrary decision might have been rendered, the record also discloses evidence in full support of the findings made by the court. Hence, the conclusion reached below that plaintiff had been a resident of Robeson County for more than six months next preceding the commencement of this action will be upheld. *In re Hamilton,* 182 N. C., 44, 108 S. E., 385; *Stokes v. Cogdell,* 153 N. C., 181, 69 S. E., 65.

Judgment affirmed.